**FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT**
**UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
_____ **DIVISION**

CASE NO. 5:11CUOO234 sww/9Tk

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 08 2011

JAMES W. McCORMACK, CLERK
.By:_____
DEP CLERK

Jury Trial: ☑ Yes ☐ No
(Check One)

I.    Parties

In item A below, place your <u>full</u> name in the first blank and place your present address in the second blank.  Do the same for additional plaintiffs, if any.

Name of plaintiff: Byron L. Conway
ADC # 113285

Address: _____

Name of plaintiff: _____
ADC # _____

Address: _____

This case assigned to District Judge Wright
and to Magistrate Judge Kearney

Name of plaintiff: _____
ADC # _____

Address: _____

In item B below, place the <u>full</u> name of the defendant in the first blank, his official position in the second blank, his place of employment in the third blank, and his address in the fourth blank.

B.    Name of defendant: Corizon Inc. (f|k|a CMS)

Position: Medical Care Provider

Place of employment: P.O. Box 20670

Address: White Hall, AR 71612-0670

Name of defendant: Dottie Yarbrough

Position: Asst. Regional Manager

Place of employment: P.O. Box 20670 (Corizon Inc).

-1-

Address: P.O. Box 20670, White Hall, Ar 71612

Name of defendant: DR. Melvin Nance

Position: Medical Doctor

Place of employment: Corizon Inc.

Address: P.O. Box 20670

Name of defendant: ~~Barry Robbis~~ John Maples Jr

Position: ~~Director~~ Warden

Place of employment: Ark. Dept. of Correction - ~~Barbara~~ ~~Wire~~

Address: P.O. Box 20550 Pine Bluff, Ar 71611

II.   Are you suing the defendants in:

☐   official capacity only
☐   personal capacity only
☑   both official and personal capacity

III.   Previous lawsuits

A   Have you begun other lawsuits in state or federal court dealing with the same   facts involved in this action?

Yes ✓   No ●

B.   If your answer to A is yes, describe the lawsuit in the space below.  (If there is  more than one lawsuit, describe the additional lawsuits on another piece of  paper, using the same outline.)

☐   Parties to the previous lawsuit:

Plaintiffs: Byron L. Conway

Defendants: S. Whitmore, Q. Childress, D. Lebel, M. Ferricher

☐   Court (if federal court, name the district; if state court, name the county):

U.S. District Court, Eastern District of Ark.

☐   Docket Number: 5:10-cv-143

☐   Name of judge to whom case was assigned: Judge Ray

☐   Disposition: (for example: Was the case dismissed?  Was it appealed? Is it still pending?) The plaintiff dismissed the case

☐   Approximate date of filing lawsuit: N/A

☐   Approximate date of disposition: N/A

IV.   Place of present confinement: Arkansas Dept. of Correction, Grimes Unit, 300 Correction Dr., Newport, Ar 72112

V.   At the time of the alleged incident(s), were you:
(check appropriate blank)

_____ in jail and still awaiting trial on pending criminal charges

___✓___ serving a sentence as a result of a judgment of conviction

_____ in jail for other reasons (e.g., alleged probation violation, etc.)
          explain: _____

          _____

VI.   The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires complete exhaustion of administrative remedies of all claims asserted, prior to the filing of a lawsuit.  There is a prisoner grievance procedure in the Arkansas Department of Correction, and in several county jails.  Failure to complete the exhaustion process provided as to each of the claims asserted in this complaint may result in the dismissal without prejudice of all the claims raised in this complaint.

     .     Did you file a grievance or grievances presenting the facts set forth in this complaint?

          Yes ✓   No ____

     .     Did you completely exhaust the grievance(s) by appealing to all levels within the grievance procedure?

          Yes ✓   No ____

          If not, why? _____

VII.   Statement of claim

State here (as briefly as possible) the facts of your case.  Describe how each defendant is involved.  Include also the names of other persons involved, dates, and places.  Do not give any legal arguments or cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need. Attach extra sheets if necessary.)

1). The Court has jurisdiction over the plaintiff's claims of violation of federal constitional rights under 42 U.S.C " 1331 (1) and 1343.

2). The court has supplemental jurisdiction over the plaintiff's state law tort claims of Negligence under 28 U.S.C.' 1367.

3). At all times relevant and mentioned to herein, the plaintiff, namely, Byron L. Conway is a borned citizen of the United States, as well as the State of Arkansas. He is currently an inmate within the Arkansas Department of Correction (A.D.C.) at the Grimes Unit at 300 Correction Dr., Newport, Ark 72112.

4). At all times relevant, Corizon, Inc. (f/k/a Correction Medical Services), medical care provider,

-4-

is the medical care provider, contracted to provide quality medical care to all inmates at, within the Arkansas Department of Correction

5). The defendant "Dottie Yarbrough", at all times relevant is the Regional Administrator for Corizon, Inc., medical provider for the A.D.C., with the knowledge, tacit authorization and overisess of all Corizon Inc., medical employees, agents, actors, representatives at all ADC units offices at P.O. Box 8707, Pine Bluff, Ar 71611.

6). The defendant "Dr. Melvin Nance", medical doctor, at all times relevant, is the medical doctor at the Grimes Unit and is responsible for the medical care of inmates including the plaintiff.

7). Corizon, Inc., Dottie Yarbrough, Dr. Melvin Nance are medical care providers at the A.D.C. units, who had committed either actually, directively, or indrectly in deliberately causing physical injury and medical harm by "NOT" providing needed and adequate medical care such resulting in both "Deliberate Indifference" and "Cruel & Unusual Punishment".

-5-

Contined

#~~2~~ At all times relevant". ~~Barry Dobbs is the~~
~~Director of the Arkansas Department of Correction~~
~~#3~~ Warden "John Maples Jr." is Warden of
the Grimes Unit of the Arkansas Dept. of Correct-
ion. ~~Better are~~ medical care providers and at all
times relevant acting "under color of state law".
who had committed either actually, directly, or
indirectly in deliberately causing physical injury
and medical harm by "NOT" providing needed
and adequate medical care such resulting in both
"Deliberate Indifference" and "Cruel & Unusual
Punishment".

8). All defendants above have acted and continue to act under "color of state law". And is being sued in their "individual" and "official" capacities.

9). On May 25th 2010, "Conway" was transferred to the Maximum Security Unit at Tucker, Ark.

10). "Conway" was escorted to the medical department, operated by Corizon, Inc. "Conway" was pre-screened by Corizon employee, D. Lebel, LPN. "Lebel" literally opened the plaintiff's medical jacket, flip a few pages, became disgusted, and closed it, stating "this is not organized!" The plaintiff was escorted to the "East Isolation". As a result, "Conway's" medication administration Record (MAR) was not reviewed so that "Conway" could recieve his already prescribe "Colace" for his "acute/chronic digestive system issue" and May 7th 2010 "doctor referral" for a "stick neck" was "delayed."

11). On May 29th 2010, "Conway" discharged a "pool of blood" during defecating as a result of his "missed medications" not being dispensed by Corizon, Inc. and it's employee, S. Whitmore, LPN.

ADC staff contacted medical staff. D. Lebel, LPN.
Conway was denied "medical care due to a "policy"
of inmates not being able to be evaluated as a walk-
in for serious medical needs, only "emergencies". As
a result of the unconstitutional policy by "Corizon, Inc."
"Conway" suffered from "gastroentestinal distress"
all night. The unconstitutional policy was the
moving for behind the constitutional violation.

12). Defendant "Dottie Yarbrough", who had
actual Knowledge of Conway's medical condition,
a "serious medical condition". through a previous
federal lawsuit, has "tacitly authorized" the
past and these deprivations to occur. and "has not"
and "will not" intervene as directing better, faster,
more efficient medical care which has been needed.
"Yarbrough", have reviewed documents/reports of
the medical care being provided for and to
inmates within the A.D.C. unit including "MSU"
and Grimes. "Yarbrough" has "not" provided the
medical authority directing "Corizon", Inc. employees
to follow the medical protocols and abide by the
medical contract that "Corizon" entered into with
the ADC. promising much more professional and
needed medical care or treatments.

13). On June 4th 2010. "Conway" wrote an institutional grievance regarding his "May 7th 2010. doctor's referral. The delay was a clear violation of AR 833 Health Services policy and AD 09-09 Health care co-pay, a state law.

14). On June 14th 2010. "38-days" after Conway's doctor referral. "Conway" was seen by Corizon's employee. M. Ruble. APN for his "stiff neck". "Conway" was seen due to the June 4th grievance.

Note: This was the second delayed doctor's referral by "Corizon" and it's employees. "Conway" was referred to a doctor on September 1st 2009. "Conway" was "Not" seen by a doctor until "October 1st 2009". as a result of a September 28th grievance that "Conway" wrote.

"Ruble" provided neck exercises but no form of medication. Such as a "muscle relaxer" or "pain killer". Conway continued to suffer. from "physical pain" and "emotional distress"

15). On July 7th 2010. "Conway" was escorted to Max 5 barracks by "Cpl. Elliot" and "Cpl. Laws." where he was seen by "Toni Thomas. LPN" for Corizon. Inc.

"Conway" informed "Thomas" that his "NECK" condition was becoming worse and requested to see a doctor. ("Conway" held his NECK during the whole visit). "Thomas" informed "Conway" that there was "no" doctor available and that the only thing that she could do was give "Conway" some "Ibuprofen". "Conway" continued to suffer.

Note: Wendy Kelley, ADC deputy director and another ADC official has previously informed Corizon Inc. about a physician at MSU because there had been trouble with the medical provider being able to provider a doctor at the E.A.R.U. and MSU facilities.

16). On July 20th 2010. Conway was transfered to the Grimes Unit at Newport, AR., where he was housed in Housing 5 Segregation.

17). On August 6th 2010. "Conway" was sent on a medical gate pass to Harris Hospital to have X-rays conducted on his NECK. This was an order by "Dr. M. Nance, M.D., Grimes Unit Medical Doctor. The X-ray showed "no bone damage". Due to "Corizon" and Yarbrough's "deliberate indifference", "Conway's NECK condition had deteriorated to where "Conway" felt his "NECK" and "back" become numb and tingle along his spine.

18). On August 14th 2010, "Conway" submitted an institutional sick call request to "Corizon, Inc." regarding his neck injury, stinging sensation. Conway was seen by a nurse on or about August 19th 2010.

19). On August 19th 2010, "Conway" submitted another institutional sick call request, "Conway" "was not" evaluated by "Corizon, Inc." until August 25th, 2010. "Conway" was "delayed" medical care by Corizon, Inc." for 5-days violating AD AR 833 Health Services, "state law" that states that all inmates will be seen within "72-hours" by medical staff, constituting "negligence". "Conway" was evaluated by nurse, D. White, LPN for Corizon, Inc., for his neck injury.

20). On September 8th 2010, "Conway" was escorted to medical where "Conway" was examined by A. Simmonson, RN for Corizon. Simmonson conducted a simple rectal examine and discovered a small hemorrhoid that bleeds. And ordered lab test. "Conway's blood was drawn. But was "Never" provided the results by Corizon, Inc.

21). On or about September 11th 2010. "Conway" submitted an institutional sick call request concerning brain deterioration and was seen on September 16th 2010. Prior to this "Conway" was prescribed a steroid medication by "Dr. M. Nance, M.D.", regarding his neck injury. On September 9th 2010 "Conway" had a "nervous breakdown" due to "side effects" of the steroid medication. Nurse Little came through conducting pill call and comforted "Conway". "Conway" suffered a nervous breakdown as a result of "Nance" improperly failing to act on the matter. "Nance" failed to review "conway's" medical jacket which he "knew" to do so. As a result. "Nance" prescribed "Conway" the steroid while "Conway" had psychotropic medication in his system. The steroid was discontinued."

22). Prior to this, On or about September 5th 2010, "Conway" submitted an institutional sick call request concerning "profusive rectal bleeding" that frightened Conway and left Conway suffering from rectal pain and gastrointestinal distress. Conway was prescribed a medication known as "Naproxen" for his neck injury. "Nance" knew that "Naproxen" was harmful to the stomach, so harmful that

the drug had a holiday. Nance failed to properly act on the matter by reviewing "Conway's" medical jacket. IF "Nance" would have did so, "Nance" would have acknowledged that I was on "Chronic Care" for "Conway's" acute chronic digestive system. Nance caused further damage to "Conway's" digestive system. The "Naproxen" was discontinued

23). On or about September 16th 2010 "Conway" submitted "Hunger Strike" requests in the mail to "Warden Maples, Corizon, Inc and "Mental Health" regarding inadequate medical care.

24). On or about September 20th, 2010, "Conway" went on "Hunger Strike". "Conway" was escorted to medical to have his blood taken. Later, "Conway" was escorted to medical again. "Conway" was seen by "P. Tobin", P.A. Matters was discussed regarding Conway's "Neck" "Penile" and "Digestive System". "Tobin" diagnosed Conway's Neck injury as "neuralgia/neuritis" which is a "neurological disorder" and told "Conway" that if it lasted for a year the condition would be permanent.

Conway's resulting injury was a result of an existing policy, custom or action by those who represent official policy.

25). On or about September 21st 2010", B. Cowell Grimes Unit Health Services Administrator and nurse "S. Howard", LPN for Corizon came to "Conway's" cell. "Howard" made "Conway" mad because medical staff was giving "Conway" the run around. "Conway" begin to holler at "Howard" and "Cowell", saying: "Stop Playing With My Damn Health!" "Cowell" and "Howard" left. Cpl. A. Green" came back to Conway's cell and stated ", I seen how she was trying to talk to you!" "Conway" begin to recieve Zantac" as a result of a sick call visit with medical staff. ~~Footnote~~ Footnote: "Corizon" had a custom, policy, or pratice of allowing it's staff prescribe the same medications "over" and "over". This was the second time "Conway" was prescribed "Zantac", and which caused a delay in adequate treatment.

26). On or about December 1st 2010, Conway was seen by "Corizon" staff for his digestive system.

-14-

Conway once again was prescribed "Tums" an anti-acid that he had been prescribed before.

27). On December 5th, 2010, Conway wrote an institutional informal grievance against Corizon, Inc. and it's staff and added some dates and issue. The ~~inadequate~~ medical care that Conway needed and did not recieved, which resulted in harm was a " continuing, widespread, persistant pattern of unconstitutional misconduct by Corizon's employee: deliberate indifference to or tacit authorization of such conduct by Corizon policymaking officials, due to Corizon has recieved "Notice" from the plaintiff and other inmates of Corizon's staff misconduct.

28). On or about December 12th, 2010, Conway was seen by Nurse "Howard", regarding numbness and tingling of his "Neck injury". Conway" continued to suffer severely from "tingling, numbness, and pain. "Conway" had been previously prescribed "Tylenol" but now takes "Excedrin migraine"

29). On or about April 13th 2010, "Conway" discharged

-15-

a pool of blood during defecating which was very painful and frightened the plaintiff. "Conway" Notified staff and had to be escorted to the infirmary. "Conway" was prescribed a "bland diet". This was the result of the above mentioned "deliberate indifference.

30). "Conway" wrote a grievance against "CORIZON" and it's staff and Warden John Maples Jr. because "Conway" "had not" been seen at Chronic Care" since he had been at the Grimes Unit for his acute/chronic digestive system which Conway was on prior and when he came to this unit. "Maples" knew of "Conway's" issue of not recieving medical care due to a request that was forwarded to him September 2010 and from other requests and grievances. "Maples" knew it was his duty to provide "Conway" medical care but failed to act on the matter by ensuring that "Conway" recieved needed and adequate medical care. "Maples" was directly responsible for the deterioration of Conway's condition.

31). On or about April 16th 2011. Conway begin
to recieve his "bland diet".

32). On May 13th 2011. "Conway" was seen for
the first time at "chronic care". Prior to this
date "Conway" had to see nurses "over" and
"over" again. And was being prescribed the same
medications. On April 21st, 2011 "Conway" was
prescribed "Omeprazole" again. Dr. Nance failed
to act by thorougly reviewing the plaintiff jacket and
try something New.

33). Since the filing of the last greivance Conway
has been prescribed more medication for his
acute/chronic digestive system. "Conway" now has
to eat a "bland diet" and take 5 medications for
his "acute chronic/digestive system", which is a
permanent or life long loss. And continues to
suffer from his "neurological disorder" which
causes "Conway" to tremble. And will limit his
job opportunities.

Therefore, "Conway" submitts this Complaint
against "Maples", "Corizon, Inc." "Yarbrough"
and "Nance" for "Deliberate Indifference 3
Cruel and Unusual Punishment.

-17-

# "Relief Requested"

Wherefore, plaintiff requests that the court grant him the following relief.

A). Issue a "declaratory judgment" stating that:
 1. The inadequate medical care by defendants "Corizon, Inc.", "Dottie Yarbrough", and "Dr. Melvin Nance", violated the plaintiff's rights under the Eighth Amendment of the United States Constitution and constituted negligence under state law.

B) Issue an "injunction" ordering the defendants or their agents to:
 1). Immediately arrange for an "EGD" procedure to be conducted on the plaintiff, and follow up with any prescribed treatment.

C). Award "Compensatory Damages" in the following amounts:
 1). $500,000.00 against defendant "Corizon, Inc." for the physical and emotional injuries sustained as a result of "Deliberate Indifference."

2). $ 250,000.00 against defendant "Dr. M. Nance for the "physical and emotional injuries" sustained as a result of "Deliberate Indifference"

3). $ 100,000.00 against defendant "Dottie Yarbrough" for the "physical and emotional injuries" sustained as a result of "Deliberate Indifference.

D). Award "punitive damages" in the following amounts:

1). $ 350,000.00 against each defendant

I declare under penalty of perjury (18 U.S.Cs 1621) that the foregoing is "true" and "correct".

Executed on this 11th day of August, 2011.

Respectfully Submitted,
151 Byron L. Conway
Byron.L. Conway #113285
Grimes Unit
300 Correction Dr.
Newport, Ar 72112

~19~

IGTT430                                                              Attachment VI
3GD

                                                                    @ Grimes

INMATE NAME: Conway, Byron      ADC#: 113285   GRIEVANCE#:MX-10-01397

CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION


You submitted MX-10-01242 on May 29, 2010, grieving that the officer informed Nurse Label that your hemorrhoids were bleeding but she did not assess you, and that your pending doctor's call referral (from EARU) related to this same issue had not been completed;

01243 on May 30, grieving that nursing staff had not given you your Colace since you arrived at the Maximum Security Unit on May 24, and that a nurse stated that you would have to ask for it;

01306 on June 4, grieving that your May 7th doctor's call referral had not been completed; and

01397 on June 14, grieving that Nurse Childress did not give you your Colace or Multivitamin at pill pass and when the officer contacted her she refused to bring it back, stating that you should have asked for it during pill pass and you had not.

The Infirmary stated that you are correct that you had not been seen for your pending doctor's call referral from EARU; however, that issue was resolved when the provider saw you on June 14 regarding your stiff neck and rapid heat beat; you failed to mention your rectal bleeding; that your Medication Administration Record was not sent with your medical record but the nurse made a new one on May 26, and you received your first dose of medications on that same date, your May 27 and 28 doses were omitted, but your medications were administered again on May 29 and continued through July 1 (the date of some of the Infirmary responses). They found 01242, 01243 and 01306 with merit but resolved; however, 01397 was found without merit because they stated that your Colace is ordered to be taken as needed, which means that you must ask the nurse for it and your June 14th dose is initialed and circled indicating that you did not ask for it. In your appeals, you agree that a provider did see you on June 14th, but you claim that Dr. Hughes (EARU) advised that he would order an anascopic exam if your bleeding continued, that there was no excuse for your medication doses being omitted, that CMS needed to do a better job, and that you should not have to ask for your pills.

Although Dr. Hughes did note on April 13th that he would perform a anascopic exam if your bleeding continued, you had an opportunity to discuss all of your medical concerns with the provider on June 14th and because an anascopic exam has not been ordered at this time, that issue is without merit. Your Colace 100mg is ordered to be taken twice daily as needed, which means that you must ask the nurse for it; however, your Multivitamin 100units is ordered to be taken once daily, so you do not have to ask for it. Since your June Medication Administration Records were not forwarded to my office as requested, I find 01397 with merit; however, your other appeals are without merit.


Wendy Kelley          -S.      8/27/10

IGTT430                        Page 1 of 2

IGTT430                                                    Attachment VI
3GD

INMATE NAME: Conway, Byron       ADC#: 113285      GRIEVANCE#:GR-10-01468

### CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

You submitted a grievance dated December 5, 2010, concerning not receiving proper medical care for three issues: neck pain, digestive issues, and your penis; you specifically state that you went a month without seeing a provider from September 1, 2009 through October 1, 2009.

The medical department responded, per AD 10-32, "The Unit Level Grievance Form shall be completed and submitted within 15 days after the occurrence of the incident,.." You are clearly out of time frame. None of the issues you have addressed are emergency situations. AD 10-32 also states, the inmate should write a brief statement that is specific as to the substance of the · issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." Also per AD 10-32, "The Unit Level Grievance Form should address one problem/issue and not multiple problems/issues. You have failed to follow policy. For these reasons I find this grievance to be without merit. If you have further issues utilize the sick call process."

As I responded to another of your appeals today, I noted that you were seen by Dr. Nance on September 1, 2010, and by APN Simmons September 8, 2010. Complaints regarding whethere you were seen in September 2009 are not allowed by the grievance policy as you have fifteen (15) days from the incident to submit a grievance.

A review of your electronic medical record indicates that you are frequently seen in the medical department, most recently about issues with your feet and your penis. The most recent sick call visit was on March 11, 2011, when you were seen for the complaint of your feet getting worse which resulted in your being referred to the doctor. Dr. Nance examined you March 18 and submitted a consult referring you to Foot Clinic, and noted you had no urgent health needs. This appeal is without merit.


_____                    _____
        Signature                                    Date
                                                  3/24/11


IGTT430                        Page 1 of 1

IGTT430                                                                    Attachment VI
3GD

INMATE NAME: Conway, Byron      ADC#: 113285      GRIEVANCE#:GR-11-00548

### CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

You grieve on April 13, 2011, that you have not been seen on Chronic Care for your
acute/chronic digestive system.

The infirmary responded, "Review of your record shows that you have been seen multiple times
by providers. However, you have not had a visit specifically for chronic care until 4/13/11.
Therefore, this grievance is found to be with merit but already resolved. If you have further
issues utilize the sick call process".

I have reviewed your record and you were seen on January 12, 2011, by Melvin Nance, MD, for
Erectile Dysfunction, on January 20, 2011, Dr. Nance reviewed a returned urology consultation
request, on March 18, 2011, you were seen by Dr. Nance for your feet and referred for a
Footwear Clinic Evaluation, on April 5, 2011, Dr. Nance saw you to review your Consultation
Request from Footwear Clinic that had been returned, on May 13, 2011, you were seen in
Clinicians Chronic Care Clinic for GERD and rectal bleed, on June 27, 2011, you were seen by
Betty Hutchinson, APN, for a spot on your penis.

You have been seen by a provider on five occasions and had your record reviewed by a provider
once since January 12, 2011. The infirmary found your grievance with merit, but resolved,
because you had been seen on Chronic Care on May 13, 2011 (the above date is a typo, the
actual Chronic Care encounter was May 13, 2011).

I uphold the Infirmary's decision and find this appeal without merit.


_____          _____
          (Signature)                              Date
                                                   7/12/11


IGTT430                          Page 1 of 1